UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GEORGE DEMOS,<br><br>　　　　Defendant. | Case No. **25-cr-00682-RSH**<br><br>I N F O R M A T I O N<br><br>Title 15, U.S.C., Secs. 78j(b) and 78ff, and Title 17, C.F.R., Sec. 240.10b-5 – Securities Fraud (Insider Trading); Title 18, U.S.C., Sec. 981(a)(1)(C) and Title 28, U.S.C., Sec. 2461(c) – Criminal Forfeiture |

The United States Attorney charges, at all times material:

INTRODUCTORY ALLEGATIONS

1. Acadia Pharmaceuticals, Inc. ("Acadia") was a biopharmaceutical company based in San Diego, California. Shares of Acadia were publicly traded on the National Association of Securities Dealers Automated Quotations Stock Market ("NASDAQ"), a national securities exchange, under the symbol "ACAD." Acadia was an issuer with securities registered under Section 12 of the Securities Exchange Act of 1934 (the "Exchange Act") and was required to file reports under Section 13 of the Exchange Act.

1

2. The Food and Drug Administration ("FDA") was a federal agency of the Department of Health and Human Services. The FDA was responsible for protecting and promoting public health through the control and supervision of, among other things, prescription drugs.

3. As of 2021, Acadia's only fully FDA-approved pharmaceutical product was Pimavanserin, sold under the brand name Nuplazid, for the treatment of Parkinson's Disease psychosis.

4. Acadia had a Policy Against Trading on the Basis of Inside Information (the "Insider Trading Policy") that applied to all Acadia employees. The Insider Trading Policy prohibited Acadia employees from trading in Acadia stock while in possession of material nonpublic information. The Insider Trading Policy defined "inside information" as "important information about [Acadia] . . . that is not yet publicly available (i.e., information that has not yet been disclosed to the public in a press release or filing with the Securities and Exchange Commission (the "SEC")) about [Acadia]." The Insider Trading Policy stated it was illegal "for anyone to use inside information to gain personal benefit …." The Insider Trading Policy stated that the following items, among others, may be considered inside information: scientific, clinical or regulatory achievements; the status of product development programs; and the launch of new products.

5. Defendant GEORGE DEMOS was a resident of San Diego, California. Defendant DEMOS held a medical doctorate degree. Defendant DEMOS became employed by Acadia in or about October 2015. In or about 2020, Defendant DEMOS was promoted to Vice President of Drug Safety and Pharmacovigilance at Acadia. As part of his employment at Acadia, Defendant DEMOS was also a member of the labeling team, which focused on developing drug labels.

6. By virtue of defendant DEMOS's employment and job responsibilities with Acadia, defendant DEMOS had access to material nonpublic information belonging to Acadia, including information about the drug approval and labeling process with the FDA, prior to such information being released to the investing public.

7. By virtue of defendant DEMOS's employment and job responsibilities with Acadia, defendant DEMOS owed a fiduciary duty and duty of trust and confidence to Acadia and its shareholders.

8. Defendant DEMOS held an individual brokerage account at E*Trade with account number ending in -2651.

THE SCHEME TO DEFRAUD

A. <u>Defendant DEMOS Obtains Inside Information about the Expansion of the Nuplazid Label</u>

9. Between in or about June 2020, and on or about March 8, 2021, defendant DEMOS learned, by virtue of his role as Vice President of Drug Safety and Pharmacovigilance, and membership in the labeling team at Acadia, that Acadia had applied for FDA approval for the expansion of the label for Nuplazid to treat dementia-related psychosis ("DRP"). For example, defendant DEMOS knew:

    a. On or about June 3, 2020, Acadia submitted its supplemental New Drug Application ("sNDA") for Nuplazid to the FDA to expand the label.

    b. From on or about June 3, 2020, to in or about December 2020, Acadia communicated with the FDA regarding the FDA's review of the sNDA.

    c. In or about January 2021, FDA employees conducted an in-person inspection of Acadia's San Diego office.

3

    d. In or about February 2021, Acadia and the FDA continued to correspond about the sNDA and anticipated commencing labeling discussions on or about March 3, 2021.

10. In March 2021, defendant DEMOS learned that labeling discussions with the FDA had stalled, indicating a problem with the label. For example:

    a. On or about March 3, 2021, defendant DEMOS texted Acadia co-workers about the lack of information about the label discussions and stated, "Bad news I guess?"

    b. On or about March 4, 2021, defendant Demos received an internal Acadia email that re-scheduled a March 4, 2021, meeting of the labeling team to March 5, 2021, because senior officials at Acadia were "not quite ready to discuss FDA feedback on the draft DRP label."

    c. On or about March 5, 2021, defendant Demos received an internal Acadia email canceling the meeting of the labeling team scheduled for March 5, 2021, because Acadia had "not yet received FDA feedback on the draft DRP label." The email stated a "placeholder" meeting would be scheduled for March 8, 2021.

    d. On or about March 5, 2021, after receiving the email canceling the meeting of the labeling team that day, defendant DEMOS texted an Acadia co-worker, "This isn't a bad label It's no label…."

11. Defendant DEMOS knew that expanding the label was expected to generate significant revenue for Acadia because the expanded drug could treat a larger patient population. As a result, defendant DEMOS knew Acadia's involvement in expanding the label was material nonpublic

4

information that a reasonable investor would find to be material to the decision whether or not to trade in Acadia securities and, when publicly announced, would materially affect Acadia's share price. Defendant DEMOS knew that approval of the label would positively affect the stock price while a denial of the label would negatively affect the stock price.

B.   <u>Defendant DEMOS Conducts Securities Transactions on the Basis of Inside Information</u>

12. On or about March 8, 2021, defendant DEMOS received an internal Acadia email moving the meeting of the labeling team from March 8, 2021, to March 9, 2021. The email had subject line, "PLACEHOLDER – NUPLAZID DRP Labeling Subteam." The email stated, "Updated placeholder timeslot as we have not yet received FDA feedback on draft DRP label."

13. On or about March 8, 2021, at approximately 8:27 a.m. Pacific Time, defendant DEMOS texted an Acadia co-worker, "So…today's labeling meeting moved to tomorrow…."

14. On or about March 8, 2021, at approximately 10:32 a.m. Pacific Time, defendant DEMOS sold 60,800 shares of Acadia stock at an average share price of approximately $46.61 for $2,833,856.15 through his individual brokerage account at E*Trade ending in -2651.

15. On or about March 8, 2021, at approximately 12:00 p.m. Pacific Time, Acadia uploaded a press release to BusinessWire ("the Corporate Disclosure") announcing that on or about March 3, 2021, the FDA notified Acadia it had identified deficiencies in the sNDA. At approximately 1:05 p.m. Pacific Time, the Corporate Disclosure was publicly available on BusinessWire.

16. On or about March 8, 2021, at approximately 1:13 p.m. Pacific Time, the Acadia Chief Executive Officer sent a company-wide internal email with "DRP Update" in the subject line. The email stated that Acadia had just issued its press release (the Corporate Disclosure) "providing a regulatory update" on the sNDA and indicating that the FDA had identified "deficiencies" that prevented the FDA from discussing the label with Acadia.

17. On or about March 9, 2021, the first full trading day after the Corporate Disclosure, at the close of the market, Acadia's stock dropped approximately 45% to approximately $25.02 per share.

18. By selling Acadia stock on March 8, 2021, before the Corporate Disclosure, defendant DEMOS avoided a loss of approximately $1,313,263.00.

## COUNT 1

### Securities Fraud - Insider Trading

On or about March 8, 2021, within the Southern District of California, defendant GEORGE DEMOS, knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and the facilities of national securities exchanges, used and employed manipulative and deceptive devices and contrivances in connection with the purchase and sale of Acadia securities, in violation of Title 17, Code of Federal Regulation, Section 240.10b-5 by: (a) employing a device, scheme, and artifice to defraud members of the investing public and (b) engaging in acts, practices, and a course of business that operated and would operate as a fraud and deceit upon a person, in that defendant DEMOS executed and willfully caused to be executed a securities transaction, namely, the sale of 60,800 Acadia shares at an average price of approximately

$46.61 per share for a total price of approximately $2,833,856.15, on the basis of material nonpublic information relating to the transaction that he used in breach of a duty of trust and confidence that he owed directly and indirectly to the issuer of those securities, to the shareholders of the issuer, and to other persons and entities that were the source of the material nonpublic information.

All in violation of Title 15, U.S.C., Secs. 78j(b) and 78ff, and Title 17, C.F.R., Sec. 240.10b-5.

## FORFEITURE ALLEGATION

1. Introductory Allegations contained in paragraphs 1 through 18 of this Information and Count 1 are realleged as if fully set forth herein for purposes of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the offense set forth in Count 1 of this Information, and pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Rule 32.2, Federal Rules of Criminal Procedure, defendant GEORGE DEMOS shall forfeit to the United States any property, real or personal, which constitutes and was derived from proceeds traceable to such violation. The property to be forfeited includes, but is not limited to, a forfeiture money judgment in the approximate amount of $1,313,263.00.

3. If any of the above-described forfeitable property, as a result of any act or omission of defendant GEORGE DEMOS, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided

without difficulty, it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the property described above subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

DATED: March 5, 2025

ANDREW R. HADEN
Acting United States Attorney

*Janaki G. Chopra*
JANAKI G. CHOPRA
Assistant United States Attorney